| | |
|---|---|
| **WILLIAM H. MURPHY, JR.**<br>One South Street, 23rd Floor<br>Baltimore, Maryland 21202 | * **IN THE** |
| | * **CIRCUIT COURT** |
| *Plaintiff,* | * **FOR** |
| v. | * **BALTIMORE CITY** |
| **MIDTOWN BALTIMORE, LLC**<br>The Residences at the Inner Harbor<br>801 Key Highway, Unit 461<br>Baltimore, Maryland 21230 | * Case No. *24-C-17-004887 OT* |

**WILLIAM H. MURPHY, JR.**
One South Street, 23rd Floor
Baltimore, Maryland 21202

          *Plaintiff,*

          v.

**MIDTOWN BALTIMORE, LLC**
The Residences at the Inner Harbor
801 Key Highway, Unit 461
Baltimore, Maryland 21230

    **SERVE ON:**
    The Corporation Trust, Inc.
    2405 York Road, Suite 201
    Lutherville-Timonium, Maryland
    21093

**and**

**Joseph A. Graziose**
5 Delamar Court
Glen Cove, New York 11542

**and**

**Joseph V. Graziose**
45 Herb Hill Road
Glen Cove, New York 11542

          *Defendants.*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiff, William H. Murphy, Jr., hereby sues Midtown Baltimore, LLC, Joseph A. Graziose and Joseph V. Graziose ("**Defendants**"), and for causes of action, states as follows:

## NATURE OF ACTION

1.    This lawsuit arises out of Defendants' faulty construction and/or repair of Plaintiff's home located in Baltimore City, Maryland. Defendants negligently constructed

Plaintiff's home, misrepresented the quality of their work and/or repairs, did not fulfill promises within the contract of sale, breached statutory warranties owed to homebuyers of new construction, violated the Maryland Consumer Protection Act and committed other tortious acts with respect the marketing, sale, construction and repair of Plaintiff's home. Despite their actual and/or constructive knowledge of the defective construction and/or repairs, their misrepresentations and breaches of contract, warranty and the Consumer Protection Act, Defendants' failures have caused Plaintiff to suffer damages. Consequently, Defendants are liable to Plaintiff for the damages resulting therefrom.

## JURISDICTION AND VENUE

2.     Plaintiff's home, the property which is the subject matter of this action, is located at 801 Key Highway, Unit 100, Baltimore, Maryland 21230 and includes the unit itself, interior fixtures, doors, windows, surrounding walkway, balcony and patio which are only accessed by Plaintiff and Plaintiff's invitees (the "**Murphy Home**").

3.     This Court has jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102 and § 6-103.

4.     Baltimore City is the proper venue for this action pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-201 and 6-202.

## FACTS COMMON TO ALL COUNTS

5.     The Residences at the Inner Harbor, Baltimore, a Condominium (hereinafter the "**Condominium**") is a residential condominium located in Baltimore City, Maryland. The Condominium consists of approximately 192 residential units, three commercial units and a promenade unit, contained within four masonry, six-story buildings with each being connected by a

four-story high connecting building, a below-grade parking level, a clubhouse/gathering area, surrounding grounds, roads, sidewalks, driveways, parking spaces, and other facilities.

6.      Plaintiff, William H. Murphy, Jr. is a resident of Baltimore City, and brings this action on his own behalf as the owner of the Murphy Home located at the Condominium.

7.      Defendant, Midtown Baltimore, LLC (hereinafter "**MB LLC**") is a Maryland limited liability corporation that engages in business in the state of Maryland, including in Baltimore City. MB LLC held itself out as the "Condominium Developer" and is a "Declarant" who subjected the improved Condominium property to a condominium regime by recording a Declaration, Amended Declarations and Condominium Plats among the land records of Baltimore City. MB LLC and Plaintiff entered into a Contract of Sale for Plaintiff to purchase the Murphy Home on or after December 11, 2014.

8.      Defendant, Joseph A. Graziose (hereinafter "**J.A. Graziose**"), is a resident of the State of New York and is and/or was a member of MB LLC. J.A. Graziose participated in and personally controlled, supervised, accepted, directed and made all decisions regarding the development, design, construction, maintenance, and repair of the Murphy Home as well as the marketing, negotiation and sale of ownership therein. At all times relevant hereto, J.A. Graziose personally made, directed, actively participated in and/or cooperated in the wrongful tortious acts and representations alleged herein which are the subject matter of this action and he is personally liable therefore. Through sales/marketing efforts, contract negotiations and communications with Plaintiff, J.A. Graziose developed a special business relationship with Plaintiff with regard to the Condominium and the sale of the Murphy Home to Plaintiff. At all times relevant, J.A. Graziose was acting individually on his own behalf and/or within the scope of his authority.

9.      Defendant, Joseph V. Graziose (hereinafter "**J.V. Graziose**"), is a resident of the

3

State of New York and is and/or was a member of MB LLC. J.V. Graziose participated in and personally controlled, supervised, accepted, directed and made all decisions regarding the development, design, construction, maintenance, and repair of the Murphy Home as well as the marketing, negotiation and sale of ownership therein. At all times relevant hereto, J.V. Graziose personally made, directed, actively participated in and/or cooperated in the wrongful tortious acts and representations alleged herein which are the subject matter of this action and he is personally liable therefore. Through sales/marketing efforts, contract negotiations and communications with Plaintiff, J.V. Graziose developed a special business relationship with Plaintiff with regard to the Condominium and the sale of the Murphy Home to Plaintiff. At all times relevant, J.V. Graziose was acting individually on his own behalf and/or within the scope of his authority.

10.     Hereinafter, MB LLC, J.A. Graziose and J.V. Graziose are collectively referred to as "**Defendants**".

11.     Defendants also held themselves out as the general contractor and builder who supervised, directed and performed the construction of the Murphy Home within the Condominium. Defendants supervised, directed, performed, inspected and approved the development, design and construction of the Murphy Home within the Condominium, and who sold the Murphy Home to Plaintiff. Defendants also supervised, directed and/or performed repair/warranty work and customer service matters relative to the Murphy Home.

12.     Defendants provided personnel, resources and services for purposes of developing, designing, supervising construction, constructing, marketing and selling the Murphy Home and the Condominium and supervised, directed, and performed maintenance and repair services on behalf of Plaintiff.

13.     Defendants employees and officers handled communications with Plaintiff,

4

conducted marketing and advertising, engaged in pre-contractual and contractual negotiations with Plaintiff who ultimately purchased the Murphy Home located at the Condominium, and coordinated settlement for the conveyance of the Murphy Home to Plaintiff. As a result of Defendants' communications and negotiations, Plaintiff developed a direct relationship with Defendants and looked to them for advice and information regarding the decision to purchase the Murphy Home.

14.     At all relevant times hereto, Defendants were engaged in and/or held themselves out as being engaged in the business of erecting or otherwise creating improvements to realty, including the improvements to the Murphy Home at the Condominium, or were granted said improvements for resale in the course of its business.

15.     The Defendants represented that the Condominium wherein the Murphy Home is located is "luxury living at its finest", a place where residents will enjoy an "effortless lifestyle" and advised Plaintiff that it had and/or would oversee construction to assure quality. Defendants promised to perform and/or coordinate all repair/warranty work necessary to correct deficiencies in materials or workmanship at the Murphy Home.

16.     Defendants, through its officers, employees and agents, engaged in marketing and promotion for the sale of the Murphy Home located at the Condominium, employed sales representatives, engaged in sales presentations and advertising campaigns and made misrepresentations that are the subject of this complaint.

17.     It was represented to Plaintiff that the Murphy Home was and/or would be constructed: in accordance with plans and specifications and in accordance with applicable building codes. These representations and assurances from Defendants led Plaintiff to purchase the Murphy Home.

18.     Contrary to these representations, it has been discovered that the Murphy Home as

built, contains many serious construction and/or design defects, including concealed structural defects, and was not constructed as promised in that, among other things, there are failures to comply with applicable building codes; deviations from plans and specifications; use of faulty and inferior materials; and unworkmanlike construction that does not meet the minimum industry standards and building practices for the construction and design of residential condominiums. In addition, certain "repairs" alleged to have been performed by Defendants have been discovered to have been not performed, inadequately and/or improperly performed, and in some cases to have actually exacerbated the underlying defects.

19.     These construction defects substantially affect and compromise the represented quality, integrity, safety, performance, and structural integrity of the Murphy Home and have resulted in damage to Plaintiff's real property, including, but not limited to, damages to other portions of the Murphy Home, such as: water damage and flooding within the Murphy Home; water leaks at windows, walls, doors and roofs; premature deterioration; structural instability; premature wood damage; peeling paint; water infiltration and water damage to building components within the external walls and roof structure; interior mold and mushroom growth; interior water damages; deterioration and damage to the building structures and the interior walls; damage to interior wall finishes, trim, and other finished areas; unfinished, incomplete and/or unrepaired concrete walkways and drainage, and, in some cases, unsafe conditions which present a substantial risk of serious personal injury and/or death and property damage.  Moreover, said defects have substantially increased the represented expense and financial responsibility of Plaintiff as a result of the need for premature maintenance, repair and replacement of defective/incomplete improvements.

20.     By way of example only, the construction deficiencies at the Murphy Home include:

6

    a.       Windows and exterior doors were not properly flashed or sealed when installed, resulting in water leaks and damage to interior finishes;

    b.       Incomplete building envelope/weather resistive barriers, cavity flashings, window flashings and/or underlayments which allow for water infiltration which damages interior finishes and allows for mold growth;

    c.       Faulty repairs and/or replacement of doors and related underlayment, flashings, sealants and/or components which have resulted in continued and additional water infiltration causing damage to interior finishes and/or framing components;

    d.       Exterior defects/deficiencies which present a substantial risk of serious personal injury and/or death and/or property damage, including but not limited to failure to supply, install, complete and/or provide excavation of side patio and install concrete substrate for future finish leaving exposed materials, uneven finishes, and trip hazards;

    e.       Failure to properly supply and install custom closet systems per California Closet Design in master bedroom suite, hallway, drum room and study;

    f.       Failure to properly supply and install the Steam Shower system in the master bedroom suite;

    g.       Failure to properly supply and install a unique keyed lock at door of the drum room;

    h.       Failure to properly supply and install a flat door in lieu of a standard panel door in the drum room;

    i.       Failure to supply, install and/or provide additional drainage at the exterior patio;

    j.       Failure to supply and install wire power feed to exterior for future use;

7

k.      Failure to supply and install a sweep at the bottom of the emergency egress metal gate;

l.      Failure to pressure wash and clean existing exterior patio area;

m.      Failure to repair and re-paint underside of second floor balcony; and

n.      Failure to supply, install, repair and/or provide installation of humidification system at the HVAC systems.

23.      The defects set forth above are caused by substandard workmanship and/or materials, noncompliance with manufacturers' and fabricators' instructions, deviations from plans and specifications, building code violations, improper design or detailing and/or improper inspection, supervision and approval of construction. Although Defendants should have known, were made aware of, and/or carelessly disregarded the existence of many of these defects (many of which are latent in nature and could not have been discovered by Plaintiff upon reasonable inspection), Defendants failed to correct these defects or to disclose them in the construction, sale, repair or management of the Murphy Home.

24.      Additionally, Defendants failed to provide monetary compensation in the amount of $20,000.00 toward the cost of exterior improvements to the Murphy Home after written demand and copies of invoices were provided to Defendants.

25.      Plaintiff has fully performed and satisfied all of their contractual and legally binding obligations, and all legally required conditions precedent or prerequisites to the filing of this action.

26.      As a direct and proximate result of the actions and omissions of Defendants, there exist various construction defects throughout the Murphy Home which in turn have caused damage to interior finishes, exterior components of the Murphy Home and at other locations. As a direct and proximate result of Defendants' conduct described herein, Plaintiff has sustained

8

actual property damage, including, but not limited to, damage to the Murphy Home. Defendants' actions as described herein have further created a substantial and foreseeable risk of property damage and/or serious personal injury to Plaintiff, their guests, and pedestrians. In addition, Plaintiff has been severely inconvenienced and has suffered and will continue to suffer the loss of the use and personal enjoyment of their homes as well as the loss of value of their homes, and will incur and/or have incurred attorney's fees, construction consultant fees necessary to evaluate the construction defects, repair fees and other expenses and damages due to the conduct of Defendants as alleged herein.

## COUNT I
### (Negligent Construction)

27. Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

28. In connection with the development and construction of the Murphy Home, Defendants held themselves out, and permitted themselves to be held out by others, as expert developers and builders with expertise in the design, development, construction and supervision of construction of residential projects.

29. At all relevant times hereto, Defendants knew they were designing, constructing, installing, supervising, inspecting and/or approving the construction of a residential condominium project containing numerous homes which had been and/or would be sold and conveyed to consumers for residential and family purposes. Defendants intended and could foresee that the individual purchasers, including Plaintiff, would be relying upon them to construct, design and oversee construction of the Condominium, including the Murphy Home, with the skill and care required of experts in their field.

30. Defendants knew, or with the exercise of reasonable care should have known, that

9

the Plaintiff would suffer damages if the Murphy Home and/or Condominium was not designed, constructed, engineered, supervised and built with the ordinary and reasonable care and skill required of developers, contractors, architects, and engineers within the industry.

31. Defendants, by and through their principals, agents, servants and employees, participated in, cooperated in, supervised, directed, inspected and/or approved the construction and design of the Murphy Home and also participated in constructing, finishing, directing, overseeing, supervising, inspecting, maintaining and/or approving the improper, deficient, and defective construction of the Murphy Home.

32. Defendants, by reason of the direct relationship it cultivated with Plaintiff as alleged herein, including pre contractual negotiations, privity of contract, control of the Council of Unit Owners of the Condominium, and the circumstances surrounding and attending its direct participation in creating, developing, constructing, marketing, managing, maintaining and selling the Murphy Home, shared an "intimate nexus" with Plaintiff and thereby owed him a duty to design, construct, inspect, supervise, oversee, finish, and approve construction of the Murphy Home with the reasonable skill and care required of developers, general contractors, architects and/or engineers so as to avoid creating an unreasonable and serious risk of personal injury, property damage, economic injury and other damages to Plaintiff and other persons whose use of the Murphy Home was known or foreseeable.

33. Defendants failed to discharge their duty and failed to exercise ordinary skill and care in accordance with accepted industry standards in that, among other things, they: (a) failed to follow the plans and specifications; (b) failed to perform their work in a good and workmanlike manner; (c) failed to conform their work to the minimum requirements of the applicable building codes, statutes, laws, and regulations; (d) failed to construct the Murphy Home in accordance with

10

generally accepted industry standards and practices for workmanship and materials; (e) failed to properly supervise, oversee, direct, and/or inspect the development and construction of the Murphy Home; (f) approved defective construction and construction which deviated from the drawings, plans and specifications; (g) failed to properly prepare and/or utilize applicable drawings, plans and specifications; (h) negligently and carelessly obtained improper and defective drawings, plans and specifications; (i) defectively designed the Murphy Home; (j) failed to properly repair defective conditions at the Murphy Home; (k) used faulty, improper and defective materials in the construction of the Murphy Home; and/or (l) were otherwise negligent in designing, constructing, repairing supervising, directing, inspecting, overseeing and approving development and construction at the Murphy Home.

34.    Plaintiff did not know that the Murphy Home contained design and construction defects, code violations, deviations from the plans and specifications, nor were they aware of its inherently dangerous and defective condition at the time they took conveyance of the Murphy Home. Moreover, Plaintiff would not and could not have discovered such defects and deficiencies by reasonable inspections at those times.

35.    As a direct and proximate result of the negligent and careless conduct of Defendants, and without any negligence on the part of Plaintiff contributing thereto, the Murphy Home as designed and built, creates an unreasonable and serious risk of personal injury, has resulted in property damage and other damages and injuries described above.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems proper.

11

## COUNT II
### (Title 10 Implied Warranties)

36.     Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

37.     Section 10-203 of the Annotated Code of Maryland, Real Property Article statutorily creates certain implied warranties.

38.     In connection with the sale and conveyance of improvements at the Murphy Home, it was impliedly warranted by Defendants that the improvements were: (a) free from faulty materials; (b) constructed in accordance with sound engineering standards; (c) constructed in a workmanlike manner; and (d) fit for habitation.

39.     These implied warranties were breached in that, among other things, the Murphy Home was: (a) not free from faulty materials; (b) not constructed in accordance with sound engineering standards; (c) not constructed in a workmanlike manner; and (d) not as otherwise impliedly represented.

40.     None of the conditions amounting to a breach of implied warranty would have been revealed to a reasonably diligent purchaser at the time of sale.

41.     None of the defects or deficiencies claimed herein were caused by abuse or failure to perform maintenance on the part of Plaintiff or the homeowner controlled Council of Unit Owners.

42.     As a direct and proximate result of the breach of implied warranties Plaintiff has suffered the injuries, property damage and other damages set forth above.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems proper.

## COUNT III
### (Negligent Misrepresentation)

43.     Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

44.     Defendants, through their principals, officers agents, servants and employees, carelessly and negligently made, directed, approved, participated in and/or cooperated in the making of misleading statements as alleged heretofore, including without limitation: (a) that the Murphy Home was constructed in accordance with plans and specifications; (b) that the Murphy Home was constructed in accordance with applicable building codes; (c) that the Murphy Home was constructed with quality craftsmanship; (d) that defective/incomplete construction work at the Murphy Home had been or would be completed, corrected and/or repaired; and (e) that the Murphy Home, had been and/or would be constructed in conformity with the representations and represented qualities, characteristics and features described heretofore.

45.     These representations were untrue and misleading in that, among other things, the quality of construction and materials were not as represented and in many cases substandard, below acceptable industry standards, defective, in violation of applicable building codes and plans and specifications, omitted or installed improperly.   These construction deficiencies were not repaired by Defendants or were repaired in an ineffective, inappropriate and/or defective manner. Defendants did not stand behind the Murphy Home it constructed and has refused to repair violations of building codes, substantial deviations from plans and specifications, and other defective construction work that is incomplete or in need of correction or repair.

46.     By reason of their intimate nexus with Plaintiff, as alleged heretofore, Defendants owed a duty of care to Plaintiff as consumers whom they had solicited and who they knew was relying on them as experts in the development, construction, management and sale of residential

13

condominiums in making his decision to purchase the Murphy Home.

47.     Defendants initially controlled the activities and affairs of the Council of Unit Owners and also prepared, signed and certified the Public Offering Statement and Declarations, as amended, for the Condominium and had a duty to fully disclosed and accurately describe the characteristics of the Condominium and/or the Murphy Home and to make known to the Plaintiff all material facts and circumstances affecting the Murphy Home, including the existence, nature, and extent of defects and deficiencies in the design and construction of the Murphy Home as well as the need for repairs. Defendants also owed a duty to refrain from making false representations which would be likely to mislead Plaintiff and cause them damage.

48.     Defendants intended for their representations to be acted upon and relied upon by Plaintiff in connection with their decision to purchase the Murphy Home.

49.     Defendants had knowledge that Plaintiff would rely on their representations that, if erroneous, would cause him injury and damage and subject him to a risk of personal injury and property damage.

50.     Plaintiff justifiably and reasonably took action in reliance on Defendants' representations, such as by entering into a contract of sale, accepting deeds and assuming long term financing arrangements to pay for the Murphy Home.

51.     Defendants breached their duty to Plaintiff by making, ratifying, participating in and inspiring the false and misleading representations as described heretofore and by failing to ensure or verify that the Murphy Home was constructed as promised and represented.

52.     As a direct and proximate result of Defendants' negligent misrepresentations, and the justifiable and detrimental reliance thereon, the Plaintiff has been subjected to a serious risk of personal injury and property damage and has suffered the damages and injuries described above

14

without any negligence on the part of Plaintiff contributing thereto.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems proper.

## COUNT IV
### (Violation of the Maryland Consumer Protection Act)

53.    Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

54.    At all times relevant hereto, the improvements and materials at the Murphy Home as well as all repair work and services provided by Defendants were "consumer goods," "consumer realty," and/or "consumer services" in that the Murphy Home was built, sold, and/or intended for household, family and/or residential purposes.

55.    Defendants, directly and indirectly, through advertisements, brochures, sales literature, documents, oral statements and other conduct, held themselves out to the consuming public as experts in the construction, development and management of residential condominiums who were offering quality built luxury homes for sale.

56.    Defendants, directly and indirectly, through officers, directors, partners, representatives, agents, salespersons and others, made written and/or oral statements and representations, expressed or fairly implied, and engaged in other conduct in connection with the sale or offer for sale of the Murphy Home which misled Plaintiff and caused him to believe, among other things: (a) that the Murphy Home was constructed substantially in accordance with plans and specifications; (b) that the Murphy Home was built in accordance with applicable building codes; (c) that the Murphy Home was constructed with impeccable quality; (d) that meticulous attention to

15

detail was used in constructing the Murphy Home; (e) that Defendants would repair, had repaired and/or was responsible for the correction and repair of construction defects; (f) that the Murphy Home had been and/or would be constructed in conformity with the representations described heretofore; and (g) that the Murphy Home would have the represented qualities, characteristic, and features described heretofore.

57.     The conduct, statements and representations of Defendants, including those set forth above, have proved to be untrue, inaccurate and misleading and constitute unfair or deceptive trade practices in that said conduct, statements, and representations were untrue and misleading, and had the capacity, tendency and/or effect of deceiving or misleading consumers.

58.     The conduct, statements, and representations set forth above, also constitute unfair or deceptive trade practices in that they constitute a representation that the design, construction and supervision of construction at the Condominium, its condition, the materials used therein and the repairs performed thereto: (a) have a sponsorship, approval, accessory, characteristic, ingredient, use, quantity or benefit which they do not have; and (b) are of standard, quality, style, model or grade which they are not.

59.     Defendants have also engaged in unfair or deceptive trade practices in that, among other things, it failed to state material facts which would have revealed the true nature of the design and construction of the Murphy Home as well as its condition, including the fact that construction methods and materials used in the construction of the Murphy Home were defective, omitted altogether, not in compliance with plans and specifications, not in compliance with applicable building codes, deviated from acceptable industry standards, were not repaired, were repaired in a defective manner and or were not otherwise as represented. The omission of these facts is material since a significant number of unsophisticated consumers would attach importance to the information

16

withheld in the determination of whether to purchase at the Murphy Home and to otherwise accept the services of Defendants and pay monies collected by Defendants.  The failure to disclose these facts deceived and has the tendency to deceive consumers and mislead Plaintiff as to the quality of construction at the Murphy Home.

60.     Defendants also engaged in unfair or deceptive trade practices in that, among other things, it practiced misrepresentation with intent that consumers rely on the same in connection with the promotion, sale, management and so-called "repair" of the Murphy Home.  These misrepresentations were material in that they have a tendency to affect a consumer purchasing decision.  These acts and representations were made under circumstances when Defendants, who controlled the Council of Unit Owners and its management agent, and who held itself out as an expert in the construction of residential realty, knew or should have known and/or recklessly disregarded the fact that its actions concealed defects and their representations were false, were made without confidence in their accuracy, or otherwise should have been known or are deemed to have been known to be untrue in that the construction and use of materials was defective, repairs were not made or were defectively performed.

61.     The list of unfair and deceptive trade practices set forth in the Maryland Consumer Protection Act is a nonexclusive list intended to be illustrative of the types of practices prohibited by the Act.  Inasmuch as the description of unfair and deceptive trade practices set forth in the Act is intended to be a nonexclusive enumeration of prohibited practices, Plaintiff alleges that Defendants conduct, actions, omissions, statements, and representations as alleged in this Complaint constitute an unlawful trade practice prohibited by the Maryland Consumer Protection Act in that Defendants, among other things, took unfair advantage of the lack of knowledge, ability and experience of Plaintiff regarding the transactions it negotiated with Plaintiff and mislead them as to  the true

17

nature of the construction of the Murphy Home, its condition, and the materials used therein as set forth heretofore.

62.  Plaintiff, as a consumer, reasonably relied up Defendants' unfair or deceptive trade practices and as a direct and proximate result thereof, Plaintiff has suffered the property damages and other damages and losses as described herein.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems proper.

## COUNT V
### (Breach of Express Warranty)

63.  Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

64.  Section 10-202 of the Annotated Code of Maryland, Real Property Article statutorily creates certain express warranties.

65.  In connection with the sale and conveyance of the improvements at the Murphy Home, Defendants, through officers, directors, partners, representatives, agents, salespersons and others, made written affirmations of fact and promises and set forth written descriptions about the Murphy Home, including the plans and specifications for the Condominium, which include the Murphy Home, and were made a basis of the bargain between Plaintiff and Defendants.

66.  Plaintiff was shown models, pictures, diagrams, plans, specification sheets and were exposed to and/or provided with other documents, including the Public Offering Statement, sales brochures, contracts of sale and advertisements which constitute and/or contain written affirmations and descriptions of the Condominium, including the Murphy Home, which were made a basis of the

18

bargain between Plaintiff and Defendants.

67.     These written affirmations and descriptions include, among other things, that: (a) that the Murphy Home was constructed substantially in accordance with plans and specifications; (b) that the Murphy Home was constructed in accordance with applicable building codes; (c) that the Murphy Home would be constructed in conformity with the representations described heretofore; and (d) that the Murphy Home would have the represented qualities, characteristics, and features described heretofore.

68.     These written affirmations, descriptions and representations, including those described heretofore, each constitute an express warranty that the Murphy Home would be constructed and managed in conformity therewith and that Defendants would comply with their express representations.

69.     These express warranties were breached in that portions of the Murphy Home, as constructed, were, in fact, defectively constructed and contained faulty materials and inferior and substandard workmanship. The Murphy Home, as alleged heretofore, was not constructed in compliance with applicable building codes or according to plans and specifications, was not constructed with quality craftsmanship, and/or was not otherwise as represented

70.     As a direct and proximate result of the breach of the expressed warranties, the Murphy Home is defective and deficient as designed and/or built as more fully set forth above, is not otherwise as represented, and Plaintiff has suffered property damage and the injuries and damages set forth heretofore.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems

19

proper.

### COUNT VI
### (Negligent Repair)

71.     Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

72.     Defendants, by and through their principals, agents, and employees allegedly undertook certain repair work in a purported attempt to correct certain defects and deficiencies in the design and construction of the Murphy Home.

73.     Defendants, as alleged heretofore, owed a duty to Plaintiff to undertake such repair work with due care and in a workmanlike manner in accordance with the building code, plans and specifications, proper engineering and construction practices, and industry standards. Defendants breached this duty and was negligent by failing to perform the necessary repair work and/or by performing inadequate and improper repairs which did not address the underlying defects and deficiencies in the design and construction of the Murphy Home, and which in some cases exacerbated or accelerated said defects, deficiencies, and damages resulting therefrom.

74.     As a direct and proximate result of Defendants' breach of duty in the performance of repairs at the Murphy Home, without any negligence on the part of Plaintiff contributing thereto, Plaintiff has sustained and will continue to sustain substantial injury, property damage and other damages as alleged herein and will be required to expend substantial amounts to repair the defects and the property damages caused thereto.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems proper.

## COUNT VIII
### (Breach of Contract)

75.     Plaintiff adopts and incorporates herein by reference, the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully stated herein.

76.     Defendants entered into standard Contract of Sale with Plaintiff which required Defendants to construct, complete and sell the Murphy Home at the Condominum that is the subject of this action. Plaintiff was provided with a copy of a Public Offering Statement which was made part of the Contract of Sale. Pursuant to said Contracts of Sale, Plaintiff paid valuable consideration and did promise to take possession of the Murphy Home and undivided interest in the Condominium's common elements upon completion thereof.

77.     Implicit in every Contract of Sale between Defendants and Plaintiff was a covenant that the Murphy Home would be constructed in a good and workmanlike manner with ordinary skill and care.

78.     Implicit in every Contract of Sale between Defendants and Plaintiff was a covenant that construction thereunder would comply with all applicable laws, including building codes and approved plans and specifications.

79.     Implicit in every Contract of Sale between Defendants and Plaintiff was a covenant of good faith and fair dealing.

80.     Each Contract of Sale between Defendants and Plaintiff also contained express contractual covenants that the Murphy Home was and/or would be constructed in accordance with all applicable building codes in effect at the time of construction of the Murphy Home.

81.     Defendants breached these implied and express covenants by its conduct as alleged herein, in that, among other things, it failed to construct and/or provide a residence as promised, and failed to construct the Murphy Home: (a) in substantial compliance with the plans and

21

specifications; (b) in compliance with all applicable building codes, laws and regulations; and (c) in a good workmanlike manner with ordinary skills and care.

83. Defendants also breached the implied and express covenants by refusing to repair incomplete/defective work; performing improper, inadequate and defective repairs.

83. Defendants failed to cure their breaches and fulfill their contractual obligations by refusing to repair or replace defects and materials and workmanship at the Murphy Home and/or by performing improper, inadequate or defective repairs in breach of the covenant of good faith and fair dealing.

84. None of the conditions amounting to a breach of contract would have been revealed to reasonable, diligent purchaser when the Contract of Sale was executed.

85. Plaintiff has substantially performed all of its obligations under the contract and has called upon Defendants to remedy and cure its breach of contract, but it has failed, or is simply unable or unwilling to do so.

86. As a direct and proximate result of the breach of contract, the Murphy Home is defective and deficient as set forth heretofore, and Plaintiff has suffered property damage and other damages set forth herein, which were foreseeable at the time the Contract of Sale was entered into.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, and seek compensatory damages in an amount in excess of $75,000.00, together with attorneys' fees, costs and expenses of this lawsuit, and such other relief that this Court deems proper.

22

Respectfully submitted,

William H. Murphy, Jr.
One South Street, 23rd Floor
Baltimore, Maryland 21202
T: 410-951-8744
F: 410-539-6599
E: Billy.Murphy@murphyfalcon.com
*Plaintiff*

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury in this matter.

William H. Murphy, Jr.

23